UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JUN MARVIN SOMERA, an individual, on behalf of himself and others similarly situated,

Plaintiff,

v.

SAFEWAY, INC., a Delaware Corporation,

Defendant.

**CLASS ACTION**

No. 2:25-cv-01251 JNW

**FIRST AMENDED COMPLAINT FOR DAMAGES**

Plaintiff Jun Marvin Somera ("Mr. Somera" or "Plaintiff"), on behalf of himself individually and others similarly situated, alleges as follows for his Complaint:

## I. INTRODUCTION

1.1 Plaintiff brings this class action complaint against Defendant Safeway, Inc. ("Safeway") to redress Safeway's policies and practices of underpaying its hourly warehouse workers who were subjected to performance standards through a warehouse-management system called the "EXE" system. Safeway, through policies and practices common to all its hourly warehouse employees, denies statutorily required rest and meal breaks to hourly workers.

1.2 Plaintiff brings this action individually and on behalf of all his similarly situated co-workers to redress and remedy Safeway's willful violations of Washington rest and meal period law and to recover unpaid wages, penalties, interest, and attorneys' fees and costs.



**HKM EMPLOYMENT ATTORNEYS LLP**
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

## II. PARTIES

2.1 Plaintiff Jun Marvin Somera is an individual residing in Washington State. He worked for Safeway at its Auburn, Washington, distribution center as a Selector. Mr. Somera was an hourly, non-exempt warehouse employee in Washington within three years of the date of this Complaint and was subject to Safeway's productivity standards through the EXE system.

2.2 Defendant Safeway, Inc. is a foreign corporation registered in Delaware, owned by Albertsons Companies, Inc., headquartered in Pleasanton, California, and transacting business in King County.

## III. JURISDICTION AND VENUE

3.1 Acts complained of herein occurred in the State of Washington.

3.2 At all times material to this action, Defendant transacted business within King County.

3.3 This action has been filed within the applicable statutory time periods.

3.4 Jurisdiction in proper in King County Superior Court under RCW 2.08.010.

3.5 Venue is proper in King County Superior Court under RCW 4.12.025 because Defendant presently transacts business in King County, transacted business in King County at the time Plaintiff's causes of action arose, and because the tortious conduct occurred in King County.

3.6 Defendant Safeway, Inc. removed this case from King County Superior Court to this Court and is the party asserting federal jurisdiction.

## IV. FACTUAL BACKGROUND

4.1 Safeway operates hundreds of grocery stores throughout the United States.

4.2 At its physical stores and online, Safeway sells all manner of grocery products, including perishable and non-perishable food, kitchen items, greeting cards, children's toys, and more.

4.3 Safeway's business is immensely profitable. Safeway is part of the Albertsons family of companies, which rakes in hundreds of millions in profits each year.



HKM EMPLOYMENT ATTORNEYS LLP
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

4.4 Safeway is able to turn such enormous profit by maximizing its revenue and minimizing its expenses. Labor is one of Safeway's largest expenses.

4.5 Particularly labor-intensive is Safeway's supply chain, through which Safeway moves its products from its producers to stores, or directly to consumers.

4.6 Safeway accomplishes this logistical feat by moving products from producers to distribution centers, where the products are sorted to fill orders, mostly to Safeway's retail locations.

4.7 The filling of these orders is done by laborers called "selectors," who gather products throughout the vast warehouses using electric pallet jacks.

4.8 Additionally, some selectors, known as "mechs," or "mezzanine" selectors, work at conveyor belts to gather products for distribution.

4.9 The distribution of products is also supported by warehouse laborers who operate forklifts to perform "replenishment" and "put away" duties effectuating the selectors' gathering of products.

4.10 In order to extract maximum productivity from these selectors, "mechs" and forklift operators, and thereby increase its profit, Safeway sets strict "productivity standards."

4.11 These productivity standards are so draconian and dehumanizing that they have subjected Safeway to fines from Washington's Division of Occupational Safety and Health (DOSH).

4.12 DOSH cited Safeway because its productivity standards were so strict that they resulted in serious hazards, and did not even allow time for selectors to use the restroom, which could result in urinary tract infections (UTIs), pain, kidney damage, and other long-term injuries and illnesses.

4.13 Safeway, in each of its warehouse distribution centers in Washington used, and at one distribution center still uses, a computerized warehouse-management system known as the "EXE" system to facilitate product distribution and to monitor and enforce Safeway's productivity standards.



HKM EMPLOYMENT ATTORNEYS LLP
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

4.14 Safeway enforces its productivity standards through the EXE system by assigning a set amount of time in which each order must be filled, called the "standard time" or "standard minutes."

4.15 In distribution centers that use or used the EXE system, selectors, including "mechs," and forklift operators all are or were subject to this EXE productivity system.

4.16 Each time a worker is given an order, they are also given the standard time in which it must be completed.

4.17 The ratio between the actual time that it takes the worker to complete the assignment and the standard time results in the selector's "performance percentage." For example, if the standard time is 10 minutes, and the worker completes the assignment in exactly 10 minutes, their performance percentage is 100 percent.

4.18 If the worker completed the same assignment in 11 minutes, their performance percentage would be less than 100 percent. If the selector completed the assignment in 9 minutes, their performance would be greater than 100 percent.

4.19 Workers' performance percentage is tracked over two-week increments. If their performance percentage is anything less than 100 percent at the end of the two-week period, they are subject to discipline up to and including termination.

4.20 Workers are also subject to discipline, up to and including termination, if their performance percentage on any single day is less than 85 percent, or if their performance percentage for any single week falls below 95 percent.

4.21 A mere five instances of human fallibility in failing to meet any of these automatous standards in a nine-month period results in suspension, i.e., a loss of income. A sixth means termination.

4.22 In order to exert maximum pressure on selectors to fill orders quickly, Safeway informs workers of their current performance percentage. This information is designed to motivate workers who are below the required productivity percentage to finish assignments


HKM EMPLOYMENT ATTORNEYS LLP
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

faster even than the standard time provided for each individual assignment, improving their overall performance percentage and hopefully avoiding discipline or termination.

4.23 Washington law requires workers receive a ten-minute rest break for every four hours of work and a thirty-minute meal break for every five hours of work.

4.24 Safeway accounts for these required breaks through "Suspended Time." Suspended time is a set amount of time allocated for meal and rest breaks.

4.25 On assignments where selectors are to take their breaks, Safeway adds this "Suspended Time" to the total time, such that the time allowed to complete the order within productivity standards is extended to account for the break.

4.26 However, under the EXE system, workers are allowed to continue filling orders during Suspended Time. They can continue to pick products for their assignments during the time that is allocated for their break.

4.27 The predictable result is workers subject to Safeway's productivity standards face immense pressure to work during their breaks, thereby completing orders in significantly less time than allocated and boosting their overall productivity percentages in effort to avoid discipline or even termination.

4.28 Safeway knows that its workers engage in work during their break times. This is because the EXE system logs the exact time that each product in an order is picked.

4.29 Safeway therefore can view the exact times that products were picked on assignments with added break time and can see instances where products are being picked during break time. Safeway admits this is the way it could check or monitor whether selectors are working through breaks.

4.30 Safeway knows, and has known, that the EXE system allows workers to work through breaks.

4.31 Despite this, Safeway does not provide its employees any additional compensation when its productivity standards force employees to work during breaks.



HKM EMPLOYMENT ATTORNEYS LLP
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

4.32 Safeway does little to stop employees from working during their breaks, and, in fact, through enforcement of its oppressive productivity standards aimed at maximizing profits, encourages them to do so.

4.33 Safeway's heavy-handed enforcement of productivity standards, coupled with its "see no evil" attitude towards selectors working during break time, creates a culture that encourages selectors to work through their breaks.

4.34 Jun Marvin Somera worked as a selector at Safeway's Auburn distribution center.

4.35 Like all selectors, "mechs" and forklift operators, Mr. Somera was subjected to Safeway's productivity standards.

4.36 During the entirety of his employment by Safeway, Mr. Somera was subjected to productivity standards through the EXE warehouse-management system.

4.37 On multiple occasions, Mr. Somera succumbed to Safeway's pressure to work during rest and meal breaks, including on November 1, 2024. He continued to pick products during suspended time and was thereby deprived of legally compliant meal and rest breaks.

4.38 On multiple occasions, even when Mr. Somera was taking his lawfully entitled meal and rest breaks, management-level supervisors would interrupt those breaks, and those of his coworkers, to scold Mr. Somera and others for minutes on end about their shortcomings in meeting Safeway's iron-fisted productivity standards, thus forcing them to forgo that break time for work-related activity, and not-so-tacitly encouraging them to work through future breaks.

4.39 Mr. Somera on occasion did not receive any meal breaks during shifts in which he worked five or more hours, including June 29, 2022, and May 9, 2023.

4.40 Safeway did not provide Mr. Somera with additional compensation for either the work that he performed during break times or for the missed meal periods and breaks. Mr. Somera was therefore deprived of wages in violation of Washington law.



HKM EMPLOYMENT ATTORNEYS LLP
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

## V. CLASS ACTION ALLEGATIONS

5.1 Representative Plaintiff realleges paragraphs 1.1 through 4.29 of the Complaint and hereby incorporates the same by reference

5.2 Representative Plaintiff brings this action on his own behalf, and as a representative of the following persons who are entitled to remedies under Washington State law including, but not limited to:

Rest Break Class

> All hourly, non-exempt Safeway warehouse employees in Washington who were subjected to Safeway's productivity standards through the EXE warehouse-management system any time within the period beginning three years prior to the filing of this Complaint to the date of certification of the class.

Meal Break Class

> All hourly, non-exempt Safeway warehouse employees in Washington who were subjected to Safeway's productivity standards and who worked a shift longer than 5 hours any time within the period beginning three years prior to the filing of this Complaint to the date of certification of the class.

5.3 Plaintiff's class claims satisfy all the requirements for class action certification pursuant to the Civil Procedure Rules 23(a) and 23(b)(1), 23(b)(2), and 23(b)(3).

5.4 Satisfying all requisite numerosity requirements, hundreds of current and former employees in Washington State are believed to be members of both classes. Joinder of so many class members into a single action is impracticable. In fact, given the number of class members, the only way to deliver substantial justice to all members of the class is by means of a single class action.

5.5 There are questions of fact and law common to the class, which predominate over any questions affecting only individual members. The questions of law and fact common to the class arising from defendant's conduct include, without limitation, the following:

a. Whether Safeway promotes a culture that encourages its hourly employees to work during their rest breaks?



**HKM EMPLOYMENT ATTORNEYS LLP**
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

b. Whether Safeway promotes a culture that encourages its hourly employees to work during their meal breaks?

c. Whether Safeway provides any additional compensation to compensate its employees for the work they perform during rest or meal breaks?

d. Whether Safeway fails to provide meal periods for all shifts of five hours or more?

e. Whether Safeway provides any additional compensation to compensate its employees for the missed or legally noncompliant breaks and meal periods?

f. Whether Safeway's failure to ensure its hourly employees took legally required rest and meal breaks was intentional or willful?

g. Whether Safeway's failure to compensate employees for work during rest and meal breaks was intentional or willful?

h. Whether Safeway's failure to compensate employees for missed or legally noncompliant meal or rest breaks was intentional or willful?

5.6 The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of Plaintiffs' claims.

5.7 Representative Plaintiff's claims are typical of those of the class in that he, just like the other members of both classes, was pressured to work during his rest and meal breaks, and was denied meal and rest breaks and was not adequately compensated for doing so.

5.8 A class action is the appropriate method for the fair and efficient adjudication of this controversy. Defendant has acted in a general manner to the damage of the class. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of class members to protect their interests. Moreover, the individual damages of each of the class members are so low that it would be economically



HKM EMPLOYMENT ATTORNEYS LLP
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

impracticable for putative class members to bring their claims individually.

5.9 Representative Plaintiff is an adequate representative of the class because he is a member of the class, and his interests do not conflict with the interests of the members of the class he seeks to represent. The interests of the members of the class will be fairly and adequately protected by Representative Plaintiff. Representative Plaintiff is represented by attorneys who have extensive, multi-jurisdictional experience representing clients in complex class action litigation.

5.10 Maintenance of this action as a class action is a fair and efficient method for the adjudication of this controversy. It would be impractical and undesirable for each member of the classes who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

5.11 If this action is not certified as a class action, then the only way that the court system will not be overburdened by a multiplicity of suits over the subject matter of this complaint is if members of the class cannot or do not pursue an action against Defendant for reasons altogether unrelated to the merits of their claims, e.g., challenges in accessing legal counsel, the mundane realities of surviving in a challenging economy, et cetera. Most plaintiffs can obtain legal representation for their claims only through a class action. The only practical way to ensure that all members of the class are afforded an opportunity to obtain substantial justice with regard to the wrongs and injuries inflicted upon them by Defendant is to resolve the subject matter of this complaint through a class action.

## VI. FIRST CAUSE OF ACTION – FAILURE TO PAY WAGES OWED IN VIOLATION OF WASHINGTON LAW

**(On behalf of Representative Plaintiff and on behalf of the Classes)**

6.1 Representative Plaintiff realleges paragraphs 1.1 through 5.11 of the Complaint and hereby incorporates the same by reference.



HKM EMPLOYMENT ATTORNEYS LLP
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

6.2 Safeway's policies and practices, described above, deprived Representative Plaintiff and the Class Members legally compliant meal and rest periods, and denied them of pay for legally non-compliant meal and rest periods.

6.3 Safeway's practice of failing to provide Plaintiff and Class Members all required meal and rest periods violates Washington law, including RCW 49.46.020, RCW 49.46.090, and RCW 49.52.050. They are entitled to unpaid wages at the applicable wage rates and prejudgment interest, in amounts to be proven at trial, as well as their costs and attorneys' fees.

## VII. SECOND CAUSE OF ACTION – WILLFUL WITHHOLDING OF WAGES IN VIOLATION OF WASHINGTON LAW

**(On behalf of Representative Plaintiff and on behalf of the Classes)**

7.1 Representative Plaintiff realleges paragraphs 1.1 through 6.3 of the Complaint and hereby incorporates the same by reference.

7.2 Safeway's violations of wage and hour law deprived Representative Plaintiff and Class Members of pay willfully and with intent to do so, in violation of RCW 49.52.050 and RCW 49.52.070. Representative Plaintiff and Class Members are therefore entitled to compensatory damages, double damages, attorneys' fees, and costs.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Representative Plaintiff, and all others similarly situated, demand judgment against Defendant and pray this Court do the following:

A. Issue a declaration which makes clear the illegality of Defendant's wrongful conduct.

B. Order Defendant to make Representative Plaintiff and the other class members whole by providing compensation for past and future pecuniary losses resulting from the unlawful practices described above in amounts to be determined at trial.

C. Order Defendant to make Representative Plaintiff and the other class members whole by providing appropriate prejudgment interest, in an amount to be determined at trial, and other affirmative relief necessary to eradicate the effects of the unlawful practices.



HKM EMPLOYMENT ATTORNEYS LLP
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

D. Order Defendant to pay Representative Plaintiff and the other class members punitive and/or treble damages to the fullest extent allowed by law, including but not limited to all punitive and/or treble damages for a knowing or willful violation of the Consumer Protection Act.

E. Award Representative Plaintiff and the other class members the costs of this action, including attorneys' fees, as authorized by law and/or as sounds in tort, contract, or equity.

F. Grant any additional or further relief as provided by law or equity which this Court finds appropriate, equitable, or just.

Respectfully submitted this 10th day of June, 2026.

*/s/ Ian Ith*
Donald W. Heyrich, WSBA No. 23091
Jason A. Rittereiser, WSBA No. 43628
Rachel M. Emens, WSBA No. 49047
Joseph W. Wright, WSBA No. 55956
Ian Ith, WSBA No. 45250
**HKM EMPLOYMENT ATTORNEYS LLP**
600 Stewart Street, Suite 901
Seattle, WA 98101
Phone: (206) 838-2504
Fax: (206) 260-3055
Email: dheyrich@hkm.com
jrittereiser@hkm.com
remens@hkm.com
jwright@hkm.com
iith@hkm.com

*Attorneys for Plaintiff*